We'll hear argument next in Boomer v. Dr. Robert Bentivegna, 21-1461. Good morning. Can you speak up or speak into the microphone a little bit more? Yes, sir. My name is Daniel Weiss. I'm a fellow of Mr. Solomon Boomer. I've been here for two months for a couple of years. Mr. Boomer entered Green Haven Correctional School. I'm having a little trouble hearing you, Mr. Weiss. Sorry. It's a bit of a razzle-dazzle. Yeah, and you can pick up the microphone there. Okay, great. Terrific. Mr. Boomer entered Green Haven Correctional School, where the history of severe back injuries included three major back surgeries, one just months before. By 2016, he was largely unable to walk because of crippling back pain. And he has brought two claims related to the treatment that he received at these two facilities. An ADA claim, if he was done in an official capacity, which is the same as the public institution itself, and then constitutional evidence against defendants that are in division capacity. And I'm right that he's no longer incarcerated at Green Haven, is that correct? That is correct. And so are his claims for injunctive relief moot? They are. They are, okay. So first on the ADA claim, the district court dismissed his ADA claim on the grounds that he had not had any of the elements of the ADA claim. So one sentence analysis. This is obviously wrong. Defendants don't defend him. Instead, the focus is exclusively on one element, which is whether he alleged that he was denied mutual access to programs, services, or activity while he was incarcerated. So this rumor alleged that he had trouble ambulating, and I cannot defend him ambulating. He could feel hardware moving in his back from his past surgeries, and he made a request for a disability accommodation. In fact, the defendant, which is the institution on the ADA claim, transferred him to Green Haven for the very reason that it was a wheelchair-accessible facility. He asked for a wheelchair so that he could access all activities outside of his cell. And defendants argue that by failing to enumerate those activities, he has somehow—he's puzzled ultimately. And they cite other kind of two ADA cases from outside the government context, like a voting station, a public library, where, of course, in that circumstance, it's not enough that a public building be inaccessible. The public needs to actually try to go there. But in the total two contexts, prison is really unique in that all services inside of the prison are services, programs, or activities provided by the law. And that's in the text of the Rehabilitation Act, and it's in the DOJ regulations, of course, in the ADA. With regard to the ADA, are the claims brought against the defendants in their individual or official capacities? And to the extent he's seeking damages, do you have an Eleventh Amendment problem? I believe we don't, Your Honor, for a valid reason. So it's true that we need to get allegations on him. And the ADA contains an explicit intent to allegations on him. But there is an additional question, which is, is that intent constitutionally constitutional? And I would make two notes on that. First is that the defendants explicitly waive that argument before this court. They say that on remand, they would like to obtain the ability to make this argument the argument, which, of course, they would have the ability to do. So we would encourage this court to assume the availability of money damages and remand for this report to be a two-person instance. If this court felt that because sovereign immunity is, in some sense, jurisdictional, that it could not, although it's frequently assumed in the appellate context to determine it first, what we would request is for this court to order something on remand. Because it was made by the defendant. We didn't address it. This is a complicated, structural constitutional law issue. I would note that there's only one circuit in the published opinion that has addressed this. It's the Ninth Circuit. It held that Title II has a whole aggregate sovereign immunity, including in the prison context. So a rule for the defendant on this ground would create a circuit split on an issue never read. So we would certainly encourage this court to not do that. But I'm sure my colleague on the other side and I would both be happy to file sovereign immunity. So I'm sorry. If Your Honor felt an issue had to be reached. Thank you. So unless Your Honor has another question, I'll be back. I have a question on the ADA. Yeah. It doesn't look like there was an IRO of this complaint. It went straight to 12b. But the district judge was very generous, extraordinarily generous in construing this, I think, as bringing an ADA claim. So the district judge notes that there is reference to 2614 in the body of the complaint. And then I think notes the accommodation request that's attached that you've referred to. But combining those, reading this very generously, all we have is a contention that I, quote, need a wheelchair so I can participate in all activities. And then even in the request for relief, there's no discussion of a request for participation in any particular activity. And I read your argument about he doesn't need to itemize. And it may not need to be exhaustive. But isn't this just wholly conclusory and a generic claim that I can't do things? How is that sufficient? Well, I have a suggestion. So on your first point, complaints, especially prosecuted complaints, well, they are validations to facts, not legal documents. So I would say if it was- But he doesn't allege in the body of the complaint that he was denied access to any services. That is true. The attachments to the complaint under federal civil secrecy are part of the complaint for all purposes. He- it is a determination made by the Supreme Court. The defendants don't contest it. But what I would say is that it's not just standing alone, which is to say that it's not entirely conclusory. Because what we have is allegation after allegation after allegation about severe back injury, I can't get out of bed, I feel hard when I'm moving my back. So the idea that he couldn't access a program of service or activity if he was unable to leave his bed because of everything in prison, meal time, visitation, work programming, because all of those are programs of service or activities, it's not conclusory. It's a reasonable objective, obvious inference. And I would just make one note, which is that if defendants- we argue that this is a stylistic pleading deficiency against a- against a pro se plaintiff, a pro se incarcerated disabled plaintiff, that he should be under arrest. But if- if your honors feel otherwise, we feel like he obviously couldn't have access to programs of service or activities. He should be given the opportunity to amend. Defendants argue that he waived that by going up for appeal because he didn't take the district court's earlier opportunity to amend. However, the district court only gave him the opportunity to amend to address specific pleading deficiencies identified in the complaint. And the- on his APA claim, they didn't address any pleading deficiencies. They just said he states none of the elements, including the elements of whether the New York prison system is a public entity, which is totally self-evident, whether he had a disability, which is totally self-evident. So any sort of remission would be futile. There was no- he- he could not have remedy- he could not have complied with the district court's order to amend. So if this court felt that this stylus deficiency in front of me doomed his complaint down, he should be very easy to take down. Thank you very much. You've reserved two minutes for rebuttal. So we'll hear from the other side. Thank you, your honors. I'll address the APA claim first. And then, Mr. Merriam, I think you're exactly right. The allegation about his pleading, which, again, in particular areas of the- I mean, in particular areas of the facility, that has all activities under the power of the inclusion. He's not supported by any facts at all. He can't state a claim, even if it has a pro se plaintiff, without alleging facts that are a matter of supporting plausible instances of liability together. And I think that is- I think it's actually important here that he should have had some facts about what particular areas he was not able to access without a wheelchair. And that's because if the facility doesn't know what he's complaining about, what areas he's unable to access, there's no way for them to know how they can- Well, he did request an accommodation of a wheelchair. I mean, so- and there's a dispute about whether he actually could walk with great pain or without great pain. I mean, shouldn't he have an opportunity, if that's the deficiency, to amend his complaint to list some of the particular activities that he would have wanted to commute to in a wheelchair? Well, he was given that opportunity. I think the claim that he could disappear was that he could have on an amendment. He could have said, look, this is a public entity. Look, I have a disability. And here are particular areas I couldn't get to. He opted not to do that. And he requested an audience complaint at his residence. And the complaint that was flagged doesn't even include the particular allocation we're talking about here. That was just a brief case. So he could have fixed this if he wanted to. He chose not to. And that's another complaint. Could you turn to the question of the failure to effect service on Nurse Practitioner Leroy Leonard? I was concerned that, you know, Mr. Boomer is a prisoner. He has to rely on U.S. Marshals to effect service. He gave some information that was available to him, I gather, about Mr. Leonard having moved. But, you know, he's acting pro se. He's criticized for not requesting an extension of time within which to serve. But he's at the mercy, really, of the Marshals Service, isn't he? Why should we be dismissing or upholding a dismissal for failure to timely serve Mr. Leonard? Well, just to be clear, he wasn't dismissed for not failing to time his service. It was mostly dismissed as a denial of labor grounds, which my friend doesn't defend, but that was on the deal so that the issue of whether to grant an extension of time would possibly lead to a disreport on remand. He's allowed to rely on the Marshals Service, but he still has to show good cause for an extension of time. And he hasn't done that. He hasn't shown any diligence in any attempt to ask for more time, to ask the District Court for help in locating Leonard, to even ask the facility for assistance in finding him address. He hasn't taken any step in the years since he filed his complaint to do that. I'm just a little confused about how heavy a burden, sorry, that should be placed on him. Where his resources are limited, the Marshals Service has more resources than he does, and the prison and the state have, you know, Mr. Leonard's a former employee. I mean, you're saying Boomer's claims against Leonard should have been dismissed for failure to serve him with process. That just kind of puzzled me that you were so adamant about it. Sure. I'm not saying he has a heavy burden. He just had to show a minimal level of due diligence to establish good cause, and I don't think that he did that. But even if he thought that that could be excused, and the District Court had personal jurisdiction over him, the claim against Leonard still fails under the merits. But as to service of process, though, what more should he have done? I think that he could have asked Greenhaven for assistance in locating him to provide more information to the Marshals. He could have said, you're his former employee. You have his forwarding address. He could have asked even the District Court, can you help me find his address? He didn't do any of that. Right? So he didn't take literally any other step than say, this defendant is somewhere in New Mexico, I think. I just don't think that's enough. Even if you do think that that is sufficient diligence, I don't think that the claim against Leonard survives on the merits. A different question. Certainly it's not a service issue. It's just certainly on the merits of the men with claim. I don't think that he has alleged or can allege that Leonard acted with deliberate indifference when he determined not to provide him with a wheelchair. I think that that is. But why wasn't it a medical judgment to which we defer that he overrode the neurosurgeon's recommendation for a wheelchair and to give him gabapentin? Well, just on the gabapentin issue, I don't think that is raised. I don't think he was focused on the fiber entirely. And he was provided with medication. So I don't think that is a medication issue. He had Lyrica instead? He did have Lyrica. I think the choice of what drug to provide, I think it's fairly obviously a medical judgment that's left to the individual health care provider. But the nurse practitioner, in your view, could override the neurosurgeon's recommendation after the neurosurgeon's examination had been done? Because I think it's alleged that the nurse practitioner didn't examine Mr. Boomer's back. Well, I think there's two issues there. Number one is if you look at the actual recommendation documents, 57 of the record, the bottom line of it specifically indicates that the final determination will be made by the individual physician in the facility. And so it's not an order like you had, for example, in the Martinez case. Well, I have to interrupt for just a second. The physician in the facility, is a nurse practitioner then the equivalent of a physician for purposes of what you were just saying? Yes, I would say that. He's the front line medical provider in the facility. He's the equivalent of the physician. He's the one making medical decisions. So in the- What page did you mention? It's 57. 57. That's the recommendation from the neurosurgeon. And what it says, it's not a case like the Martinez case where there's an express order requiring such and such treatment. What it says is that it's recommended that he be provided a wheelchair, leading just to the discretion determination of the front line medical provider, who is his physician in the facility, and regardless of whether he's conducted a formal medical examination, he sees him in the facility walking around in a position to determine whether he's able to walk with the assistance of a wheelchair. And this is important because on the deliberate and different standard, what's required is actual knowledge that he's required in a wheelchair and a serious medical need for a wheelchair. It's not enough to say that here are some facts on which you could have made him inferred that he might be in a wheelchair. He has to actually draw the inference. That's what I understood. So understanding you to say that basically because the nurse practitioner could see him in the facility, that was sufficient to have him overrule the neurosurgeon's recommendation? Well, it's not a matter of overruling. It's a matter of the judgment that's left to him, and there's nothing that required him to infer, nothing that him to complain to, should he hit it back and forth. In fact, if you look at the documents that are attached to the complaint, what the rumor says at 53 is that, now this may be a letter from the facility, not the rumor itself, but what the letter says is that I don't feel that he has a medical need for a wheelchair. And then, again, at page 19, he says that he's not in a wheelchair because it's an interviewed nurse's fault. Yeah. Those allegations about what the letter believed, what he thought, they refute any possible inference that the letter actually knew that a wheelchair was required. He has to read and prove eventually to get that one. And he has to prove facts showing that the letter knew the actual difference, actually knew that a wheelchair was a serious medical need. And he has to prove that. And so the eighth amendment claim fails on that ground as well. I wanted to briefly touch on the phrase in the letter from them. Yes. In respect to the ADA, we're obviously glad they put it in a supplemental agreement, but I do want to point out that because the ADA claim fails, excuse me, because the eighth amendment claim fails, that's also going to do the ADA claim. As we read the provision in U.S. Department of Justice in Georgia, he's got to allege that facts underlying the ADA claim that would establish underlying eighth amendment violation to invoke the affirmation of topical evidence. I was confused about one aspect, though, with the wheelchair demand of the ADA. It seemed as though the prison facility was maybe sending mixed signals about what office within it would authorize a wheelchair, whether it was an ADA accommodation or a medical judgment. Could you straighten me out on that? Sure. If it was a medical judgment, I don't have the precise directive in front of me, but there's a directive that says if you need something for day-to-day activity, that it's a medical judgment that's left to the individual practitioner here to make that decision. So that directive overrides the ADA obligation of a federal facility to accommodate disabilities? I'm not sure that overriding determines who would make the judgment about whether it's required. I see an overriding. You were going to actually complete your thought about the eleventh amendment issue and the eighth amendment and the relationship between the eighth amendment allegation and your claim and the ADA claim. Right. So the eleventh amendment grants the state, which is the defendant effectively here, immunity from an evidence lawsuit. That has been abrogated in part by the ADA. The Supreme Court has said, and U.S. v. Georgia, that the abrogation is only partial and it applies only, as we read in the case, only if the underlying facts state an eighth amendment violation or another violation of the fourteenth amendment. And so because the eighth amendment claim failed, because he hasn't shown liberty of inference, he hasn't shown that he was denied a wheelchair as a form of punishment, because he hasn't alleged that and hasn't shown that, those same facts then can't support a five-amendment claim. Now, did you all actually claim an eleventh amendment immunity? So, we have not read that issue. As the artist pointed out, the district court was very generous in reading the ADA claim and the complaint. We didn't think that it was one there to begin with, so we didn't brief any defenses to it. The district court, this wasn't addressed at all in the district court. Did you have an opportunity to raise it after you understood that the district court liberally read the pleadings to include an ADA claim? We didn't. We didn't have any briefing or anything at the district court. We just got this decision in which the court read this plan and the complaint, dismissed it in one paragraph, and then we were called. What you're really saying is the analytical order of things is eighth amendment first, and we determine whether there's an eighth amendment or allegation sufficient to support an eighth amendment claim, and thereafter we look at the ADA claim. If there's no eighth amendment claim, that disposes of the ADA claim for purposes of the eleventh amendment. We didn't have a chance to brief the district court. We didn't have a supplemental briefing that the court would like. I don't think we got there because the claim fails on its merits. Either way, either the ADA or the eighth amendment. Either the ADA, depends on what merit has pledged. It's not a matter of tremendous effect at this point. All right. Thank you very much. Mr. Weiss. Thank you, Your Honors. I'd like to make three points and have the answer to the questions in the course. First, the edit of the origination of U.S. v. Georgia is a straightforward reform. But the law of the abrogation of sovereign immunity is that you need to state the ADA claim, and that either the abrogation of sovereign immunity that Congress intended needs to be valid, or there needs to be a companion eighth amendment violation. So if this court held that it's pledged a concomitant eighth amendment violation, then sovereign immunity is unquestionably valid. If this court holds that it does not, then it does need to reach the independent sovereign immunity question. So, which is why if this court reverses an eighth amendment, then you don't even need to reach sovereign immunity. However, if it's only going to reverse the ADA, then it doesn't need to reach that. Second, on SOGAS, I agree with Judge Carney that this rule would be unduly harsh, but my opposing counsel made an error in saying that our client needed to demonstrate their cause. That's not true. A district court can extend the time even without the cause. And the error here is not taking into account the standard of review. So the federal lies exclusively on cases where dismissals were affirmed, and never mentions the standard of review, just abuse of discretion. They primarily rely on the biller. And what this court held in the biller is this may seem harsh to dismiss, but the district court did. However, and this court even said, and our reaction would have been better. This court said, this is harsh, and we might not have done it. If this is no-no, we may have reversed. However, we have to defer to the district court. Here, the district court did the opposite. Defendants, the term abuse of discretion does not appear in the brief. They don't argue for abuse of discretion. So we think that's very straightforward. We think there is good cause. We'd love a holding on that. But if this court feels that that's a really close issue, it can affirm an alternative, perhaps, to abuse of discretion. And finally, I would just note a couple of things on the constitutional point. That's related to this one. The phrase, final decision will be made by the physician, was not written by the neurosurgeon. It's stock-type text on the form. The neurosurgeon made a recommendation for medication and for the use of a wheelchair. Excuse me, but the recommended use of the wheelchair said recommended wheelchair use PRN. That means as needed. As needed. Which suggests that it's, like, not necessary all the time, right? Yes, absolutely. So it suggests that it's not necessary all the time. But it suggests that it is necessary sometimes. Or, perhaps, in an alternative world, could be necessary whenever. But what do we have? The L issues we have here are that Boomer did need it, and that Leonard denied the recommendations by saying, basically, it looks like you can walk to me without examining his back. Despite the fact we know he has a history of surgery, he's had surgeries. We have a 2017 MRI talking about disc degeneration. And it's just a final point on medication. I think this gets to some of the primary disputes on the constitutional grounds, which is the defendant's grief, it reads like a summary judgment. So here we have, he was on a neuropathic pain medication. That's true. He mentions that. And then afterwards, he sees the prescription. The neurosurgeon prescribes him new medication. That prescription is rejected without any kind of examination by a nurse practitioner who says, it looks like you can walk to me. And defendants say, well, he didn't get that medication. He got this medication. And if you squint, it looks pretty similar. That may very well be the case on summary judgment. But what we have here are allegations of a failure to follow through on a specialist recommendation without any competing sort of examination, without any medical judgment, based on non-medical reasons. Thank you. Thank you very much. Thank you very much. Full reserve decision.